IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| WILLIAM J. WALSH | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| CONSOLIDATED DESIGN & | : | No. 05-2001 |
| ENGINEERING, INC. | : | |

**MEMORANDUM AND ORDER**

Ditter, J.                                                 September 28, 2007

      Plaintiff William Walsh filed a complaint on April 27, 2005, against his former company, Consolidated Design & Engineering, Inc., the company's only other shareholders, Rick Kolb and Steven Valeriano, and the company's attorneys, Peter Schuchman, Jr., Esq., Lisa Thompson, Esq., and their law firm, Kozloff Stoudt ("Attorney Defendants"). As part of a settlement between Consolidated, Kolb, Valeriano, and Walsh, Walsh assigned to them the remainder of his complaint, that is, his claims against the Attorney Defendants for fraud, malpractice, and civil conspiracy. Next, and on January 26, 2007, Consolidated, Kolb, and Valeriano filed crossclaims against the Attorney Defendants asserting rights to contribution and indemnity, malpractice, and a breach of fiduciary duty.

      Before me is a motion to dismiss the crossclaims as time barred and motions to dismiss the complaint and crossclaims for failure to file certificates of merit. For the reasons that follow, I find the statute of limitations does not bar the crossclaims. However, I find a certificate of merit was required for all but the original complaint's claims of fraud and civil conspiracy and

1

therefore grant the motion to dismiss all other claims.

# FACTS

Walsh, Kolb, and Valeriano formed Consolidated Design & Engineering, Inc., in 1986. Kolb and Valeriano were acting officers and directors and Walsh served as the company's president and CEO until he was terminated by them on April 24, 2004.

The Attorney Defendants served as counsel to Consolidated and in the spring of 2002, they drafted amendments to the company's bylaws and shareholder agreements which were adopted by Walsh, Kolb, and Valeriano. The initial bylaws required a unanimous vote "before any present member of the Board of Directors and/or officer is removed." *Compl., Ex. D, Art. XII, ¶ 1(f)*. The bylaws were amended by adding the following clause to the above sentence: "subject, however, to the laws governing participation in such a vote by an interested director or shareholder." *Compl.* ¶ 40(I).[1] The shareholder agreement was amended to bar each of the shareholders from selling his stock in the company until first offering his share for redemption by the company. *Berks Cty. Compl*. ¶13. Walsh claims that the amendments were actually meant to allow Kolb and Valeriano to "freeze him out of decisions regarding the Company" and undervalue his shares.

On April 2, 2004, a special meeting of the board of directors was attended by all three

---

[1] The bylaws do not specify which "laws" they are subject to, but in prior filings (Dkt. # 49 and #51), counsel pointed to 15 Pa. Cons. Stat. §1728, which states: "A contract . . . between a business corporation and one or more of its directors . . . shall not be void or voidable . . . because the director or officer is present at or participates in the meeting of the board of directors that authorizes the contract . . . or solely because his or their votes are counted for that purpose, if . . . the relationship . . . [is] disclosed or [ ]known to the board of directors . . . and the board authorizes the contract or transaction by the affirmative votes of a majority of the disinterested directors." Try as I may, I cannot see how this provision affected Walsh's ability or inability to vote at the board of directors' meeting on his own termination when the bylaws specifically required a unanimous vote before removing an officer.

officers, and one of the Attorney Defendants, Peter F. Schuchman, Jr., who signed the minutes as "Secretary of the Meeting." Walsh's personal attorney, Jack A. Linton, Esq., was present but not permitted to attend the meeting. After a motion to terminate Walsh as president was made,[2] Walsh consulted with his attorney and then inquired if he could be removed without a unanimous vote. Attorney Schuchman "explained that Subsection E of the revised bylaws provided that removal of an officer of the corporation is subject to the laws governing such a vote by an interested director." *Minutes of the Special Mtg. Of Bd. Of Dirs. Apr. 2, 2004* (Dkt. #26-2). A vote was held with Kolb and Valeriano in favor of terminating Walsh and, not surprisingly, Walsh opposing. Walsh was then declared to be terminated.

## PROCEDURAL HISTORY

Walsh first filed a charge of discrimination with the Pennsylvania Human Relations Commission on April 20, 2004, asserting harassment and discharge based on age discrimination. Walsh then filed a complaint against Kolb, Valeriano, and Consolidated in the Berks County Court of Common Pleas on September 20, 2004. His complaint asserted counts of fraud, involuntary liquidation and dissolution, breach of fiduciary duty, and wrongful discharge, as well as a shareholder derivative claim. On April 27, 2005, represented by Jack Meyerson, Esq., and Debora O'Neill, Esq., of the law firm Meyerson & O'Neill, Walsh filed a similar complaint against the same defendants in this court, adding claims of malpractice, civil conspiracy, and fraud against the Attorney Defendants.

Walsh, Kolb, Valeriano, and Consolidated agreed to binding arbitration before Magistrate

---

[2] The motion to terminate Walsh explicitly left his position as a member of the board untouched. Therefore, although Walsh was fired following the vote, he remained both a member of the board and a shareholder.

Judge Strawbridge, but the Attorney Defendants did not join in that arbitration.  On March 24, 2006, Judge Strawbridge awarded Walsh $345,060 for damages and $297,430 for the value of Walsh's shares.  Walsh and Kolb, Valeriano, and Consolidated stipulated that all claims between them were settled and that the only remaining claims involved the Attorney Defendants.  Walsh also assigned all of his remaining rights in this case to Kolb, Valeriano, and Consolidated.  *Stipulation Re. Settlement*, ¶ 1 and ¶ 9.

On November 21, 2006, Meyerson entered an appearance for Kolb, Valeriano, and Consolidated.  On January 26, 2007, O'Neill also entered an appearance on their behalf.  That same day, acting on behalf of her new clients, she: 1) withdrew the prior motion of Kolb, Valeriano, and Consolidated to dismiss the complaint she had filed on behalf of Walsh;  2) answered the complaint; and, 3) asserted crossclaims against the Attorney Defendants on three counts: contribution and indemnity; legal malpractice; and breach of fiduciary duty.

On February 22, 2007, the Attorney Defendants filed a motion to dismiss the crossclaims asserting that: 1) the arbitration award was premised on age discrimination for which they were not liable;[3] 2) the legal malpractice claim was time barred; and 3) the breach of fiduciary duty claim was time barred.

On April 16, 2007, the Attorney Defendants filed motions to dismiss the counts of the complaint alleging their misconduct and the crossclaims for failure to file certificates of merit.[4]

---

[3] The settlement agreement broadly awarded Walsh damages and did not specify or explicitly rely on any one claim. This argument is therefore without merit.

[4] A certificate of merit is a document which must accompany a plaintiff's claim that a licensed professional deviated from his or her professional standard.  The certificate must be signed by the attorney or the plaintiff and must state that "an appropriate licensed professional has supplied a written statement that there exists a reasonable probability that the care, skill or knowledge exercised or exhibited in the treatment, practice or work that is the subject of the complaint, fell outside acceptable professional standards and that such conduct was a cause in bringing

On behalf of plaintiff Walsh, O'Neill filed a certificate of merit as to each attorney defendant that same day, and on May 7, 2007, Kolb, Valeriano, Consolidated, and Walsh filed a combined response opposing the motions.

In summary, two businessmen acted to strip their partner of his authority and used the company's lawyers to enable them to do so.  Concerned over the way he had been ousted, the ex-partner brought suit against them and their attorneys so at the start of this case, the two businessmen were defendants.  They made a deal with their former partner and are now going after their former lawyers for the way the lawyers did what they were told to do.  Once defendants, these two businessmen are now plaintiffs.  In order to sue their old attorneys, they hired their ex-partner's lawyers, who in their new role had to deal with the complaint they had filed in their old role.  They did so by withdrawing a motion to dismiss the complaint and by answering it.  Not every day does a lawyer get the chance to admit or deny his (or her) own averments.

All this – and more – was presented cogently at oral argument.

## DISCUSSION

I.  STATUTE OF LIMITATIONS

The Attorney Defendants filed a motion to dismiss Kolb, Valeriano, and Consolidated's crossclaims asserting the statute of limitations bars the charges of malpractice (Count II) and breach of fiduciary duty (Count III).[5]  For the reasons that follow, I will deny the motion.

---

about the harm."  Pa. R. Civ. P. No. 1042.3(a)(1).

[5]Attorney Defendants initially filed a motion to dismiss all counts of the crossclaim for violating the statute of limitations but have since conceded that Count I for contribution and indemnity is not barred.  *Oral Argument Tr.*, p.3, July 19, 2007.

The Pennsylvania statute of limitations for both a malpractice claim and a breach of fiduciary duty claim is two years from the alleged breach of duty. 42 Pa. Cons. Stat. § 5524. Pennsylvania follows the occurrence rule whereby "the statute of limitations begins to run as soon as the right to institute and maintain a suit arises." *Fine v. Checcio*, 870 A.2d 850, 857 (Pa. 2005). The discovery rule provides an exception and allows a party to pursue an action beyond the limitations period where the injury was not known or reasonably knowable. *Id.* at 858. Both the occurrence rule and its discovery exception are used to determine when the statute of limitations begins to run in Pennsylvania legal malpractice actions. *Glenbrook Leasing Co. v. Beausang*, 839 A.2d 437, 445 (Pa. Super. Ct. 2003).

"[T]he determination of when the statute of limitations has run on a claim for legal malpractice is usually a question of law for the trial judge, unless the issue involves a factual determination." *Id.* at 444. "[T]he point at which the complaining party should reasonably be aware that he has suffered an injury is generally an issue of fact to be determined by the jury. Only where the facts are so clear that reasonable minds cannot differ may the commencement of the limitations period be determined as a matter of law." *Melley v. Pioneer Bank*, 834 A.2d 1191, 1201 (Pa. Super. Ct. 2003).

Walsh's complaint asserts that the attorney defendants committed malpractice in 2002 when they amended the bylaws and the shareholder agreement and represented to Walsh that the amendments were in his best interests when they were actually meant to freeze him out of decision making and undervalue his shares. *Compl.* ¶ 145.[6] The crossclaims of Kolb, Valeriano,

---

[6] See Footnote 1 for discussion of amendments to the bylaws. Walsh also asserted that Schuchman provided improper advice at the Special Meeting on April 2, 2004, (Compl. ¶ 58) but only incorporates this allegedly faulty advice in his civil conspiracy claim, not his claims for fraud or malpractice. *See Compl. Counts XI-XIII*.

and Consolidated similarly assert that the attorneys committed malpractice in improperly advising Kolb and Valeriano concerning the amendments and "negligently provided wrong legal advice" to Kolb and Valeriano regarding the termination of Walsh. *Crossclaim* ¶ 164. Under the occurrence rule, the statute of limitations therefore began to run at the time of the amendments and the so-called improper advice, rendered as late as the April 2, 2004 meeting.

The Attorney Defendants argue that Kolb, Valeriano, and Consolidated had notice of their alleged malpractice when Walsh filed his PHRC complaint against the crossclaimants in April of 2004, or alternatively, when Walsh filed his first lawsuit against them in Berks County on September 20, 2004. Since the crossclaim was not filed until January 24, 2007, the Attorney Defendants assert the malpractice and fiduciary duty claims must be dismissed.

In response, Kolb, Valeriano, and Consolidated state that they did not know their attorneys had done anything improper until Walsh filed his federal complaint on April 27, 2005, and for the first time asserted malpractice claims against the Attorney Defendants. At issue, therefore, is whether the PHRC complaint or the Berks County complaint provided sufficient notice to Kolb and Valeriano that the advice they had received may have been faulty. I find the complaints did not provide such notice.

"Lack of knowledge, mistake or misunderstanding will not toll the statute of limitations." *Campbell v. Picard Losier & Assocs.*, 2007 Phila. Ct. Com. Pl. LEXIS 50, *12 (Feb. 21, 2007). However, Pennsylvania courts require something more than the mere filing of a lawsuit to put one on notice of a malpractice claim. For example, in *Brodie v. Morgan, Lewis & Bockius LLP*, 70 Pa. D.&C.4th 240 (Phil. Ct. Com. Pl. 2005), the plaintiffs consulted their attorney regarding trade with Cuba and were later subjected to a federal grand jury investigation concerning that

trade. The court held that the plaintiffs did not have notice of malpractice simply from the investigation, but that notice was conferred only after a federal court denied a defense offered by their attorney. Similarly, in *Campbell*, the court held that the plaintiff did not have notice of malpractice until a judgment of non pros was entered against him. 2007 Phila. Ct. Com. Pl. LEXIS 50, *13 (noting that in granting a nonsuit, the trial court discussed that the attorney should have offered certain evidence and that his failure to do so was fatal to plaintiff's case). *See also*, *Ammon v. McCloskey*, 655 A.2d 549 (Pa. Super. Ct. 1995) (holding that *judgment* was sufficient notice of malpractice).

      While a court ruling may be enough to provide notice, it is not necessary and courts have held the statute begins to run where plaintiffs have received clear indications of negligent acts by their attorneys. For example, in *Robbins & Seventko Orthopedic Surgeons, Inc., v. Geisenberger*, 674 A.2d 244 (Pa. Super. Ct. 1996), the court applied the discovery rule to a legal malpractice claim and held that plaintiffs should have known of the alleged malpractice when they were notified by the IRS that the pension plan drafted by their attorneys was disallowed. Similarly, a letter from a condominium association regarding a problem with a deed which "explicitly accus[ed] the [attorney] of malpractice" was held to provide notice and begin the running of the statute of limitations. *Glenbrook*, 839 A.2d at 444.

      In the instant case, no ruling was issued on either Walsh's PHRC complaint or his Berks County complaint, neither of which specifically alleged malpractice. Although it is true, as the Attorney Defendants point out, that the federal complaint is based on the same factual background and repeats many of the same assertions found in the two prior complaints, there is nothing to indicate that Kolb or Valeriano should have thought that their attorneys had

committed malpractice simply because Walsh had filed his previous complaints against them.

Although it is possible that Kolb and Valeriano had reason to believe that the Attorney Defendants had acted improperly prior to the filing of Walsh's federal complaint on April 27, 2005, no definitive evidence of such knowledge has been offered.  Because notice is a material factual issue and there are no clear, undisputed facts by which a reasonable juror would be forced to arrive at a certain date of notice, the motion to dismiss on the statute of limitations issue must be denied.

However, because the statute of limitations is relevant to the possible refiling of the complaint on the claims for which a certificate of merit is required (see discussion below), I note that Kolb, Valeriano, and Consolidated concede they had notice as of April 27, 2005.  They state in their motion that "[f]or the very first time by the filing of plaintiff's complaint in this case in April 2005, the Consolidated Defendants were placed on notice that the legal advice they had received from the Attorney Defendants regarding the termination and lock out of the plaintiff Walsh was in question and may be unfounded, inadequate and simply wrong under Pennsylvania law." *Crossclaimants' Mot. Opp. Dismissal*, p.6.[7]

Therefore, for the purposes of the issues presently before me, I conclude that the statute of limitations began to run, at the latest, with the filing of the federal complaint on April 27, 2005.

---

[7] Further, I note that Kolb and Valeriano terminated their relationship with the Attorney Defendants after Walsh filed his federal complaint. *Def. Consolidated, Kolb, and Valeriano Opp. Mot. To Dismiss* (Dkt. # 100), p.18. Although it is not a bright-line rule, a number of Pennsylvania courts have held that the malpractice statute of limitations begins to run when the attorney-client relationship is severed.  *Spillman v. Wallen*, 1996 U.S. Dist. LEXIS 9284, **34-37 (E.D. Pa. 1996) (holding plaintiff should have known of malpractice at least by the time he switched attorneys at which point he was aware that he had lost a hearing on the merits); *McClanaghan v. McGreal*, 1993 U.S. Dist. LEXIS 14724 (E.D. Pa. Oct. 21, 1993) (holding the statute of limitations began to run when the attorney-client relationship was severed in a civil malpractice suit). *But see, Svarzbein v. Saidel*, 1999 U.S. Dist. LEXIS 14516 (E.D. Pa. 1999) (noting the attorney-client severance rule in criminal malpractice cases but refusing to apply the rule to civil malpractice cases).

## II. CERTIFICATE OF MERIT

Pennsylvania law requires that "any action based upon an allegation that a licensed professional deviated from an acceptable professional standard" include a certificate of merit which can be either attached to the complaint or submitted within sixty days of filing the complaint. Pa. R. Civ. P. 1042.3(a).[8] Walsh filed his complaint on April 27, 2005, and did not file certificates of merit until April 16, 2007. Kolb, Valeriano, and Consolidated filed a crossclaim on January 26, 2007, and no certificate of merit was filed until April 16, 2007. The Attorney Defendants seek to dismiss all claims against them asserting certificates of merit were required and were not timely filed.

Rule 1042.3 is subject to equitable considerations and a party who fails to timely file a certificate of merit may be relieved from the requirement where the defaulting party provides a reasonable explanation or legitimate excuse. *Womer v. Hilliker*, 908 A.2d 269, 279 (Pa. 2006). Therefore, I evaluate first whether a certificate of merit was required for the malpractice claims, second whether a certificate was required for all other claims, and third, whether equitable considerations excuse the failure to timely file the certificate.

A. Malpractice Claims

Malpractice is alleged in Count XII of the complaint and Count II of the crossclaims. Rule 1042.3 specifically requires a plaintiff to file a certificate of merit in a malpractice action within sixty days of filing the complaint, and it is undisputed that Walsh did not file his

---

[8] Rule 1042.3 is a substantive rule of law applicable to this diversity action. *Holbrook v. Woodham*, 2007 U.S. Dist. LEXIS 50966, *9 (W.D. Pa. July 13, 2007) (noting *Chamberlain v. Giampapa*, 210 F.3d 154, 158 (3d Cir. 2000), and citing numerous cases in the Western, Eastern, and Middle districts which have applied the *Chamberlain* reasoning to hold the Pennsylvania rule is substantive law).

certificates until nearly two years after they were due.  Kolb, Valeriano, and Consolidated argue first that their filing certificates of merit on the same day as the motion to dismiss (albeit twenty days late) renders that motion moot, and second, that granting this motion to dismiss will only result in the refiling of the complaint because the dismissal must be without prejudice.[9]

Kolb, Valeriano, and Consolidated do not cite a case supporting their argument that same-day filing moots the motion to dismiss.  The Pennsylvania courts have held just the opposite, specifically granting a motion to dismiss where a certificate of merit was filed a mere two hours after a judgment of non pros was entered and more than sixty days had passed from the filing of the complaint.  *Shon v. Karason*, 920 A.2d 1285 (Pa. Super. Ct. 2007).  *See also Scaramuzza v. Sciolla*, 345 F. Supp. 2d 508 (E.D. Pa. 2004) (discussing the worth of a motion to dismiss for failure to file a certificate of merit where the certificate was not filed until the plaintiff responded to the motion to dismiss).

Kolb, Valeriano, and Consolidated argue that because failure to comply with the state rule permits a defendant to seek a non pros judgment, which allows a plaintiff to refile the complaint, dismissal in federal court will be without prejudice and will simply result in refiling the complaint.  They argue the court should avoid unnecessary paper shuffling by denying the motion to dismiss.  However, Kolb, Valeriano, and Consolidated fail to recognize that where the statute of limitations has run on the underlying claim, a dismissal without prejudice is dispositive.  *See e.g., Hartman v. Low Security Correctional Institution*, 2005 U.S. Dist. LEXIS 40766*, *11(M.D. Pa. May 27, 2005) (dismissing claim for failure to file a certificate of merit and specifically

---

[9] Rule 1042.6 requires the prothonotary to enter a judgment of non pros against the plaintiff.  A defendant in federal court does not have the same procedural mechanism available and must instead file a motion to dismiss the claim.

noting that if the statute of limitations has run, it will bar a plaintiff from refiling his claim).

Count XII of the complaint raises a legal malpractice claim and therefore required a certificate of merit. Dismissal without prejudice is required where the certificate was not timely filed whether or not the plaintiff may refile his claim within the statute of limitations.

Count II of the crossclaim is also for legal malpractice and will likewise be dismissed for failure to file a timely certificate of merit. Kolb, Valeriano, and Consolidated argue that the rule does not apply to a crossclaimant because it specifically references only a "plaintiff" (*R.1042.3(a)*), "a defendant who files a counterclaim" (*R.1042.3(c)(1)*), and a defendant who joins a licensed professional on an act unrelated to the initial claim (*R.1042.3(c)(2)*). However, the rule begins by stating that a certificate of merit is required in "*any action*" alleging that a licensed professional deviated from his or her acceptable professional standard, and the explicit references to the above parties illustrates that the rule is broad in application and extends beyond plaintiffs. A crossclaimant who asserts a malpractice claim against another defendant is not excused from the requirement to file a certificate of merit simply because his particular posture is omitted from the language of the rule.

B.  Remaining Claims

The more difficult questions concern whether the claims of fraud and civil conspiracy in Counts XI and XIII of the complaint, and the claims of contribution and indemnity and breach of fiduciary duty in Counts I and III of the crossclaim, also require a certificate of merit.

The requirement of filing a certificate of merit attaches not by the wording of the complaint, but by the substance of the claim. *Varner v. Classic Cmtys Corp.*, 890 A.2d 1068, 1074 (Pa. Super. Ct. 2006). A number of courts have required a certificate of merit even where

the complaint was not phrased in terms of malpractice. *See e.g., Cappelli v. United States*, 2006 U.S. Dist. LEXIS 61010 (E.D. Pa. July 28, 2006) (allowing plaintiff to re-characterize his claim as one of battery but requiring a certificate of merit); *Varner*, 890 A.2d at 1075 (holding that failure to expressly indicate a claim of professional negligence does not exempt a plaintiff from providing a certificate of merit and requiring a certificate where the complaint "implicate[d] the propriety of the professional architectural services [defendant] provided"); *James v. Keller*, 2006 Phila. Ct. Com. Pl. LEXIS 166 (Mar. 28, 2006) (holding that a certificate of merit is required even where Civil Cover Sheet lists statutory basis for cause of action as "Breach of Contract, Fraud, and Bad Faith" but the wording of the complaint was "obviously premised on malpractice"); *cf. Schils Am. Acquisition Corp. v. Schils BV*, 2006 U.S. Dist. LEXIS 72090 (M.D. Pa. Oct. 3, 2006) (declining to require an intervening plaintiff to file certificate of merit because the purpose of the rule was fulfilled where certificates were already filed by initial plaintiff and underlying facts were identical).

    1.  <u>The Complaint: Fraud and Civil Conspiracy</u>

    The complaint contains two remaining claims: Count XI for fraud and Count XIII for civil conspiracy.

    The fraud claim in the complaint accuses the attorney defendants of acting intentionally and in bad faith in representing to Walsh that amending the bylaws and shareholder agreements was to his personal benefit. *Compl.* ¶¶ 131-133. This district has recently considered whether a certificate of merit is required in a fraud claim against a professional. *McElwee Group, LLC, v. Municipal Authority of Elverson*, 476 F. Supp. 2d 472 (E.D. Pa. 2007). In *McElwee*, Judge Eduardo C. Robreno held that Rule 1042.3 did not apply to the plaintiff's fraud claims,

distinguishing professional malpractice claims, which sound in negligence and are covered by the rule, from intentional torts, which the rule was not meant to address.  Judge Robreno explained that "[m]erely suing a professional does not require a certificate of merit; only suing a professional for violating professional standards does.  Suing a professional for fraud requires nothing more than suing one's neighbor for fraud."  *Id.* at *7.  As in *McElwee*, because this count alleges a separate intentional tort, and is not simply a claim of negligence, I find that no certificate of merit was required.

The civil conspiracy claim asserts that Kolb, Valeriano, and the Attorney Defendants "conspired and combined with one another for the benefit of themselves to discriminate against [Walsh], wrongfully terminate his employment and defraud him of the value of his share.  Said conspiracy included multiple acts of employment discrimination based upon age, wrongful discharge and providing [Walsh] with false and fraudulent legal advice and seeking to deprive him of his shares."  *Compl.* ¶ 148.  This civil conspiracy claim similarly alleges intentional, knowing conduct on the part of the attorney defendants which is distinct from the allegation that the attorney defendants were negligent.  Therefore, no certificate of merit was required for either Count XI or Count XIII of the complaint.

     2.  <u>The Crossclaim: Contribution and Indemnity and Breach of Fiduciary Duty</u>

Kolb, Valeriano, and Consolidated seek contribution and indemnity, stating that they "relied upon the legal advice and counsel of the Attorney Defendants" and that all of their actions "were performed in reliance upon the legal advice, counsel, and participation of the Attorney Defendants."  *Crossclaim* ¶ 155.  They seek to recover the money awarded to Walsh which they claim was "the result of carelessness, professional negligence, improper advice, and wrongful

conduct and omissions of the Attorney Defendants." The substance of this claim is clearly malpractice and therefore required a certificate of merit.

Kolb, Valeriano, and Consolidated also claim the Attorney Defendants breached their fiduciary duty "by acting in their personal interest and to the detriment of the corporation." *Crossclaim* ¶ 175. They list the responsibilities of the Attorney Defendants as requiring them to act "in good faith, in the best interests of the corporation with such care including reasonable inquiry, skill, competence and diligence consistent with the profession at large and the ordinary skill and knowledge of an attorney licensed to practice law in the Commonwealth of Pennsylvania." *Id.* at ¶ 173. I find this claim is also one of malpractice and it too required a certificate of merit.

C.  Equitable Considerations

Rule 1042.3 is subject to equitable considerations, but such factors must be considered in light of the Pennsylvania Supreme Court's recent decision in *Womer v. Hilliker*, 908 A.2d 269 (Pa. 2006). In *Womer*, the plaintiff filed his complaint without a certificate of merit, but had served an expert report within the sixty-day limit which included all of the information required by Rule 1042.3. Further, the plaintiff filed his certificate of merit just two days after it was due. *Id.* at 261. Nonetheless, the Pennsylvania Supreme Court rejected the Superior Court's holding that the plaintiff's substantial compliance was a reasonable excuse, going so far as to say it would be "manifestly unreasonable" to hold that the plaintiff had presented a reasonable explanation for his failure to timely file a certificate of merit. *Id*. at 274.

*Womer* therefore dictates a very strict interpretation of the rule and sets a high bar for establishing a reasonable excuse. Simply stated, Walsh and the crossclaimants have not

complied with the rule, but they do come up with an appealing reason to be excused from doing so. Counsel for Kolb, Valeriano, and Consolidated suggest that because of the substantial time and effort invested in this case by themselves, Magistrate Judge Strawbridge, and me, the late certificates of merit should be accepted. While Judge Strawbridge and I certainly appreciate their concern for the time the matter required and the recognition of our efforts, I do not find our respective workloads to be a reasonable explanation or legitimate excuse for their failing to comply with the certificate of merit rule.

## **CONCLUSION**

Therefore, Count XII of the Complaint and Counts I, II, and III of the crossclaim are dismissed without prejudice for failure to timely file a certificate of merit. The statute of limitations began to run on April 27, 2005, barring the refiling of all but Count I of the crossclaim. The motion to dismiss Counts XI and XIII of the Complaint is denied because a certificate of merit was not required.

An appropriate order follows.

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| WILLIAM J. WALSH | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| CONSOLIDATED DESIGN & ENGINEERING, INC., et al. | : | No. 05-2001 |

### ORDER

AND NOW, this 28th day of September, 2007, IT IS HEREBY ORDERED that:

1. The motion to dismiss the crossclaims for failing to comply with the statute of limitations (Dkt. # 98) is DENIED.

2. The motion to dismiss the complaint for failure to timely file a certificate of merit (Dkt. # 105) is DENIED as to Counts XI and XIII and GRANTED as to Count XII. Count XII is DISMISSED without prejudice.

3. The motion to dismiss the crossclaims for failure to timely file a certificate of merit (Dkt. #106) is GRANTED and Counts I, II, and III are DISMISSED without prejudice.

BY THE COURT:

/s/ J.William Ditter, Jr.
J. WILLIAM DITTER, JR., S.J.