IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| WILLIAM J. WALSH | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| CONSOLIDATED DESIGN & ENGINEERING, INC. | : | No. 05-2001 |

**MEMORANDUM AND ORDER**

Ditter, J. January 14, 2008

After he was ousted by his former business partners, plaintiff sued them, their company, and their lawyers. He then settled with his former partners and their company and assigned to them his claim against their original lawyers. In the meantime, the former partners also sued their original lawyers after obtaining new counsel, the lawyers who still represent plaintiff. Before me is a motion to disqualify plaintiff's lawyers from representing his former partners in their various claims against their original lawyers. The motion is based on a conflict of interest and I will grant it.

**REPRESENTATION**

Because this is an opinion on the disqualification of counsel, and because the representation of the parties has taken a confusing path, I will begin with the names and identification of the parties' attorneys.

At the outset of this case, the plaintiff, William Walsh, was represented by Jack Meyerson, Esq., and Debora O'Neill, Esq., of Meyerson & O'Neill who, despite recent attempts

to withdraw their representation, continue to be counsel of record for Walsh.

Walsh's former partners, Rick Kolb and Steven Valeriano, are represented by Joseph Haines of Austin, Boland, Connor & Giorgi, who entered his appearance on May 13, 2005, and continues to be copied on courtesy copies of all filings and letters to the court. Kolb and Valeriano are now also represented by Meyerson and O'Neill,[1] who have signed all motions and briefs at issue in this opinion.

The company from which Walsh was ousted, Consolidated Design & Engineering, Inc., was represented by Donald Wieand, Esq., and Jo Bennett, Esq., of Stevens & Lee, and Michael Carr, Esq., who have since withdrawn their representation and been replaced by Meyerson & O'Neill.[2]

The company's initial lawyers, Peter Schuchman, Jr., Esq., Lisa Thompson, Esq., and their firm Kozloff Stoudt, the defendants in this lawsuit, have been and continue to be represented by Jeffrey Albert, Esq., Peter Hoffman, Esq., and Maureen Fitzgerald, Esq., of McKissock & Hoffman.

For the sake of brevity I will refer to Walsh as the plaintiff; Kolb, Valeriano, and Consolidated Engineering as the Consolidated Defendants; and Thompson, Schuchman, and Kozloff Stoudt, as the Attorney Defendants.

## PROCEDURAL AND FACTUAL HISTORY

This suit started when Walsh sued his former partners, Kolb and Valeriano, their

---

[1] Meyerson entered his appearance on November 21, 2006, and O'Neill entered her appearance on January 26, 2007.

[2] Jo Bennett withdrew her representation on October 18, 2005, Donald Wieand withdrew on November 28, 2006, and Michael Carr withdrew his representation in October of 2005.

company, and their lawyers following their forcing him out of the partnership. Walsh and Consolidated Defendants stipulated to resolve all claims between themselves by agreeing to binding arbitration before Magistrate Judge David R. Strawbridge. The stipulation specifically excluded all of Walsh's claims against Attorney Defendants. *Stipulation*, ¶ 9. The binding arbitration resulted in an award of $642,490 with $345,060 apportioned to damages and $297,430 attributed to the value of Walsh's partnership shares.

Prior to the arbitration, the parties signed a separate agreement setting forth the payment terms of any arbitration award and the assignment by Walsh of all of his remaining claims – those against Attorney Defendants – to Consolidated Defendants. *Settlement Agreement*, ¶ 10. However, Walsh retained the option to pursue any assigned or derivative claims if Consolidated Defendants dismissed or did not pursue those claims. *Id.* at ¶ 12. Walsh also maintained a financial interest in those claims as the settlement agreement provided that any proceeds from the assigned claims would first be applied to any debt owed to Walsh and that any excess would be divided among Walsh, Kolb, and Valeriano. *Id.* at ¶ 13.

Following the arbitration and settlement agreement, Consolidated Defendants and Attorney Defendants attempted to resolve the remaining claims but were unsuccessful. Acting through their new attorneys, Meyerson and O'Neill, Consolidated Defendants then withdrew their pending motion to dismiss Walsh's complaint which had started this litigation,[3] filed an answer to the complaint, and asserted crossclaims against Attorney Defendants who had originally represented them in connection with Walsh's ouster. To put it succinctly, Meyerson and O'Neill filed a complaint, withdrew a motion to dismiss their complaint, and then answered

[3] The motion to dismiss had been filed by Stevens & Lee when they represented Consolidated Defendants.

their complaint.

Attorney Defendants then filed a motion to dismiss the crossclaims for failing to meet the statute of limitations.[4] In their motion, they drew attention to "the apparent conflict of interest with 'new counsel' for [Consolidated Defendants]." *Mot. to Dismiss Cross-cls.*, p. 2. In a conference call to discuss the possible conflict, I instructed counsel for Attorney Defendants to file a formal motion to disqualify Meyerson and O'Neill and brief the issue.[5] Attorney Defendants complied and filed the motion under consideration.

Next, I granted parts of Attorney Defendants' motions to dismiss, leaving only fraud and civil conspiracy claims asserted in Walsh's original complaint. Thereafter, on behalf of Consolidated Defendants, Meyerson and O'Neill filed a motion to amend the complaint and reinstate various claims. They then sought to withdraw their representation of Walsh, first by filing a "Notice of Withdrawal of Appearance," which was refused for failure to comply with the rules of civil procedure, and second, by filing a motion for leave to withdraw, which was denied.

Meanwhile, the plaintiff, William Walsh, wrote to me directly. He first sent a letter, copied to Judge Strawbridge, regarding his concerns about underpayment and interest owed on the notes from his settlement agreement with Consolidated Defendants. *See Walsh Letter,* Oct. 10, 2007 (Dkt. # 132). Walsh noted that he had disputed and continued to dispute the date

---

[4] See Mem. and Order of Sept. 28, 2007.

[5] Although neither party raised the issue of standing and the disqualification motion was filed at the instruction of the court, which is clearly permitted, I note that the Third Circuit has stated that "the obligation to ensure that professional ethics are followed has led courts to rule that counsel has standing to raise and challenge unethical procedures on the part of opposing lawyers." *In Re: Congoleum Corp.*, 426 F.3d 675, 686 (3d Cir. 2005) (stating that courts must be cautious to avoid allowing such motions to harass opposing counsel, but allowing insurer's counsel to raise conflict in bankruptcy proceeding in order to support the monitoring and reporting of ethical violations).

asserted by Consolidated Defendants for the beginning of interest on a note evidencing their debt to him. In addition, he said that Meyerson held that note and as payments on account were received, Meyerson would deduct his fee and forward the balance to Walsh. Walsh stated further that "[Meyerson] surprised me by stating that he would no longer represent my interest in this case but would continue to collect my award money and his fees. Judge Strawbridge suggested that in light of the above issues that I file a Motion to Enforce Settlement." *Id.*

Walsh's second letter was sent to me and copied to attorneys Meyerson, Haines, and Fitzgerald. *See Walsh Letter,* Nov. 8, 2007 (Dkt. # 133). This letter addressed Meyerson and O'Neill's motion to withdraw as counsel. Walsh stated he found the motion "unacceptable as presented," quoted paragraphs ten through thirteen of the settlement agreement,[6] noted his absolute disagreement with the statement that he is no longer an active litigant or interested party, and raised questions regarding how Meyerson and O'Neill could adequately represent his interests if they also represent Consolidated Defendants.

Meyerson and O'Neill's latest filings are the November 2007 affidavits of Kolb and Valeriano (Dkt. # 135 and #138)[7] which assert that they are financially unable to retain any other counsel to pursue their claims against Attorney Defendants should Meyerson and O'Neill be disqualified.

---

[6] See p. 3 referencing content of the settlement agreement.

[7] Kolb and Valeriano also submitted affidavits dated April 27, 2007, which were attached as Exhibits A and B to Meyerson and O'Neill's response to the motion to disqualify (Dkt. # 115) and are discussed in detail later in this opinion.

**LEGAL STANDARD**

"The district court's power to disqualify an attorney derives from its inherent authority to supervise the professional conduct of attorneys appearing before it." *United States v. Miller*, 624 F.2d 1198, 1201 (3d Cir. 1980). "The party seeking to disqualify opposing counsel bears the burden of clearly showing that continued representation would be impermissible." *Cohen v. Oasin*, 844 F. Supp. 1065, 1067 (E.D. Pa. 1994).

Motions to disqualify are generally disfavored, and a party's choice of counsel is entitled to substantial deference. *Commonwealth Ins. Co. v. Graphix Hot Line, Inc.*, 808 F. Supp. 1200, 1203 (E.D. Pa. 1992). However, parties "do not have an absolute right to retain particular counsel." *IBM Corp. v. Levin*, 579 F.2d 271, 283 (3d Cir. 1978). Indeed, as I have noted in the past, "the right of the public to counsel of its choice is, of course, secondary to the paramount importance of maintaining the highest standards of professional conduct and the scrupulous administration of justice." *Baglini v. Pullman, Inc.*, 412 F. Supp. 1060, 1066 (E.D. Pa. 1976).

The Pennsylvania Supreme Court has adopted the Rules of Professional Conduct which serve as the standard for attorneys appearing before this court. "[D]isqualification ordinarily is the result of a finding that a disciplinary rule prohibits an attorney's appearance in a case." *Miller*, 624 F.2d at 1201.

Pennsylvania Rule 1.7 "Conflict of Interest" states:

> (a) Except as provided in paragraph (b), a lawyer shall not represent a client if the representation involves a concurrent conflict of interest. A concurrent conflict of interest exists if:
>
> > (1) the representation of one client will be directly adverse to another client; or

> (2) there is a significant risk that the representation of one or more clients will be materially limited by the lawyer's responsibilities to another client, a former client or a third person or by a personal interest of the lawyer.
>
> (b) Notwithstanding the existence of a concurrent conflict of interest under paragraph (a), a lawyer may represent a client if:
>
> (1) the lawyer reasonably believes that the lawyer will be able to provide competent and diligent representation to each affected client;
>
> (2) the representation is not prohibited by law;
>
> (3) the representation does not involve the assertion of a claim by one client against another client represented by the lawyer in the same litigation or other proceeding before a tribunal; and
>
> (4) each affected client gives informed consent.

## DISCUSSION

### I. Concurrent Conflict

I first consider whether Meyerson and O'Neill's representation of Consolidated Defendants involves a concurrent conflict with their representation of Walsh. Consolidated Defendants argue that there is no directly adverse relationship between Walsh and themselves because all of the claims between them have been settled and they have a joint interest in proceeding against Attorney Defendants. In the alternative, they argue that even if there is a conflict, it was properly waived. Attorney Defendants argue that regardless of the settlement agreement, the representation creates a direct conflict that cannot be waived, and alternatively, that because Walsh never waived the conflict, the representation is prohibited. They point to the recent letters from Walsh to highlight the actual conflict and his lack of waiver.

At first glance, a direct conflict appears obvious as Meyerson and O'Neill are listed as

counsel of record for both the plaintiff and three defendants in the same case.[8] A second, third, and fourth glance adds to the appearance of conflict and highlights the question as to whom Meyerson and O'Neill owe a duty of loyalty. When Meyerson first entered his appearance on behalf of Consolidated Defendants, on November 21, 2006, he used a different caption on his filing and changed from simply identifying Walsh as the plaintiff to stating: "William J. Walsh, P.E., Individually and derivatively on behalf of Consolidated Design & Engineering, Inc." Two months later on January 26, 2007, when Meyerson and O'Neill filed an answer on behalf of Consolidated Defendants to the complaint they had filed on behalf of Walsh, Meyerson and O'Neill were noted as "Counsel for Defendants Consolidated Design & Engineering, Inc., Rick J. Kolb & Steven J. Valeriano." Three months after that, on April 16, 2007, Meyerson and O'Neill filed three certificates of merit signed as "Attorneys for Plaintiff." In other words, the captions apparently put Meyerson and O'Neill on both sides of the fence. But appearances are sometimes deceiving. Here they are not: Meyerson and O'Neill represent Walsh, who despite his assignments still has both an on-going and potentially adverse interest as to his former partners, who are also represented by Meyerson and O'Neill.

Although Meyerson and O'Neill tried to withdraw their representation of Walsh on October 25, 2007, and again on October 29, 2007, as late as May 14, 2007, they specifically stated they had a continuing attorney-client relationship with Walsh, noting in their brief responding to the motion to disqualify them, "Kolb and Valeriano were made aware of the fact that *Meyerson & O'Neill would continue to be counsel for Walsh* and continue to pursue the

[8] In fact, following my September 28, 2007 Memorandum and Order, a Lexis representative called to ensure that Lexis had the attorneys of record correctly marked for publication after noting that the same firm appeared on behalf of both plaintiff and defendants.

unresolved claims against the lawyer defendants." *Resp. to Mot. to Disqualify*, p.9 (emphasis added).

The nature and extent of Meyerson and O'Neill's representation of Walsh and Walsh's continuing interest in this litigation was further explored at oral argument on the present motion:

> **The Court**: Does [Walsh] have an interest that's still in this case?
>
> **O'Neill**: Well, the interest that he has is a joint interest with the others, Kolb and Valeriano, because under the –
>
> **The Court**: I thought he assigned all of his interests. Doesn't all mean all?
>
> **O'Neill**: No, well, perhaps, I guess maybe I don't understand. I'm getting caught up on the meaning of the word interest. He doesn't have an interest in terms of the claim. He assigned the claim. The interest he has that under the terms of the settlement agreement is if Kolb and Valeriano recover on the assigned claim, any amounts that are recovered are used to pay down the debt that Kolb and Valeriano have to Mr. Walsh under the settlement agreement. But in terms of the interest of the claim, no, he does not. That has been assigned. And it is in that role that we represent Messrs. Kolb and Valeriano.
>
> **The Court**: Well, you also represent Walsh in that sense too.
>
> **[O'Neill]**:[9] Well, to the extent that he assigned the claim, yes.
>
> **The Court**: No, to the extent that he has an interest if they recover, but he has – that money will be paid to him from their recovery.
>
> **O'Neill**: Yes, well, yes. And in that –
>
> **The Court**: And that means you represent Walsh to that extent.
>
> **O'Neill**: Yes your Honor. And in that –
>
> **The Court**: That you represent Kolb and Valeriano to that extent.

[9] The oral argument transcript erroneously credits Hoffman with this statement.

> **O'Neill**: Yes, your Honor.

*Oral Argument Tr.,* 48-49, July 19, 2007.

I can and do sympathize with Ms. O'Neill's difficulty in explaining why Walsh had no continuing interest in this matter as a result of his settlement with Consolidated Defendants right before she conceded that he did. Even the most gifted logician may encounter a problem in explaining why heads and tails are really the same. Sympathy aside, however, it is quite clear that Walsh has a continuing concern about payments from Consolidated Defendants owed to him under the settlement agreement. It is equally clear that Walsh and Consolidated Defendants have an ongoing dispute as to those payments and interest on them. Finally, it is clear, despite Meyerson and O'Neill's representation to the court that "the pertinent parts" of the settlement agreement relating to Walsh's assignment of rights include only paragraphs ten and eleven, that the agreement reserves Walsh's right to pursue any claims not pursued by Consolidated Defendants and establishes his right to the proceeds from those claims. *See Settlement Agreement* at ¶¶ 12-13. Just how and when that right might accrue – and whether Consolidated Defendants might side with Attorney Defendants to contest that right – suggests that the future might have cloudy days as well as sunny ones.

I also voiced my concern with Meyerson and O'Neill's ability to represent Consolidated Defendants when they would be obligated to pay Walsh:

> **The Court**: What are you going to do, suppose that Kolb and Valeriano recover and then they say, well, we're not going to pay Walsh after all. What are you going to do?
>
> **O'Neill**: Well –
>
> **The Court**: Who are you going to represent?

> **O'Neill**: – well, your Honor would enforce the settlement agreement before the Court.
>
> **The Court**: I didn't ask you that. I said who are you going to represent? Kolb and Valeriano say we got this money, but we're not going to pay you, Walsh, the heck with you. Who do you represent?
>
> **O'Neill**: No, that's not going to happen, your Honor. I mean, we could think of a number of different – it's just not going to happen.
>
> **The Court**: Exactly, we can think of a lot of different things. But I'm thinking of this one. Suppose they refuse to pay, who are you going to represent? Do you want to tell them, well, on second thought, brother, you don't have to pay because there's this little technicality.
>
> **O'Neill**: Well, your Honor –
>
> **The Court**: On the other hand, you'll say to Walsh, yeah Walsh, that technically doesn't apply, so they do have to pay.
>
> **O'Neill**: – well, if and when that happens, your Honor, there would be a conflict of interest. But there is not a conflict of interest right now. There is no concurrent –
>
> **The Court**: Why can't I look forward to that possibility?
>
> **O'Neill**: Well, because it's just not going to happen, your Honor, because under the settlement agreement what the parties have to do is clear.

*Oral Argument Tr.*, 49-50, July 19, 2007.

Ms. O'Neill's repeated assurances that potential future conflicts "just won't happen" has proven to be overly optimistic in light of subsequent events. Walsh has now twice written directly to me indicating that he is unhappy with his representation by Meyerson and O'Neill in recovering what he believes he is owed under the terms of the settlement agreement at which he was represented by Meyerson and O'Neill against Kolb and Valeriano. He has also stated his objection to Meyerson and O'Neill's representation of Consolidated Defendants.

Further, Meyerson and O'Neill have attempted to discontinue their representation of Walsh, first by filing an improper notice of withdrawal, a filing that was not copied to Walsh, and then, after that was refused, by filing a motion for withdrawal, which was copied to Walsh, and which contains a number of statements with which Walsh disagrees.[10] Meyerson and O'Neill have also advocated to Walsh that he retain new counsel in order to secure his settlement payments. In their motion for leave to withdraw as counsel to Walsh, Meyerson and O'Neill state "Meyerson volunteered and Judge Strawbridge agreed that with respect to the new issue of entitlement to interest under the settlement, Walsh should retain new counsel to pursue those new claims."[11]

However hypothetical the conflict might have been when I first asked what Meyerson and O'Neill would do and who they would represent if a dispute arose regarding the settlement agreement reached by Walsh and Kolb and Valeriano, the conflict is now very real. It is clear from both Meyerson and O'Neill's motion to withdraw as counsel for Walsh, and Meyerson's support for the contention that Walsh should pursue separate counsel to enforce the settlement

[10] At oral argument, I expressed concern over whether Walsh was fully informed of Meyerson and O'Neill's actions in this case. I asked what Walsh knew about everything and if he was in touch with anybody regarding the case, and Ms. O'Neill answered that "He's well aware of it. He's well aware that the claims have been prosecuted and the procedure that's going forward. And he's well aware of the assignment and the signing of the settlement agreement. He understands exactly what's going on here." *Oral Argument Tr.*, 54, July 19, 2007. Walsh's near immediate response to the motion to withdraw, which unlike the *notice* of withdrawal was actually provided to him, and his strong disagreement with the content of the motion, lead me to believe that Ms. O'Neill's statement at best evidenced a misunderstanding and at worst was disingenuous.

[11] This statement raises serious doubt as to how Meyerson and O'Neill could have reasonably believed that they would be able to provide Walsh the "competent and diligent representation" required under Rule 1.7(b)(1). This is especially true considering Meyerson and O'Neill's repeated argument that the issues in this case are especially complicated, rendering alternative counsel prohibitively expensive. *Reply to Mot. For Leave to Withdraw*, p.3. Of course, Meyerson and O'Neill were arguing at the time on behalf of Consolidated Defendants, but it is obvious that whatever difficulties and expense might face Kolb and Valeriano in obtaining new counsel would also confront Walsh.

agreement which the firm reached on Walsh's behalf, that the answer to "who" Meyerson and O'Neill would represent is Consolidated Defendants.

The Rules of Professional Conduct, however, forbid such a choice. Meyerson and O'Neill agreed to represent Walsh in his claims against Consolidated Defendants and Attorney Defendants. As part of the settlement agreement they negotiated on his behalf, Consolidated Defendants are required to pay Walsh over a period of five years, and should Consolidated Defendants prevail against Attorney Defendants on any of the assigned claims, Walsh is entitled to the proceeds. As any contracts lawyer can tell you, an agreement does not guarantee a result. Even with an agreement to pay, the representation of Consolidated Defendants is directly adverse to the representation of Walsh.

II. Exceptions to Conflict of Interest

Meyerson and O'Neill have also argued that even if the representation of Walsh is considered to be a conflict, they have met the requirements of Rule 1.7(b) and any possible conflict was waived. I find that informed consent was not obtained from Walsh and therefore that the conflict was not waived.

Rule 1.7(b)(4) requires that "*each* affected client gives informed consent." (Emphasis added). My colleague on this court, the Honorable Lawrence F. Stengel, recently ruled that a law firm was disqualified from representing both the plaintiff and a third-party defendant in an action where the plaintiff had not consented to the joint representation. *Pressman-Gutman Co., Inc., v. First Union Nat'l Bank*, 2005 U.S. Dist. LEXIS 1022, *2 (E.D. Pa. Jan. 25, 2005) (noting previous disqualification in the case was appropriate "because there was no indication that the plaintiff . . . consented to the joint representation of the [ ] third-party defendants").

In this case, Meyerson and O'Neill attached the affidavits of Kolb and Valeriano, dated April 27, 2007, as Exhibits A and B to the motion to disqualify (Dkt. # 115). These April 2007 affidavits presumably are meant to establish that Kolb and Valeriano waived any conflict in Meyerson's and O'Neill's representation. The affidavits state that they retained Meyerson and O'Neill under advice of separate counsel, Joseph Haines, Esq., with full awareness of the assignment of claims by Walsh and of the fact that "Meyerson & O'Neill would continue to be counsel for Mr. Walsh and continue to pursue his unresolved claims." However, the affidavits do not note that any potential conflicts were discussed and waived. To the contrary, they state that "Your Affiant's attorneys have explained the joint representation of the claims would inure to the benefit of both [sic] Your Affiant, the Corporation and Mr. Walsh because the effect of any financial resolution of the claims against the attorney defendants would serve to expedite and reduce the payments that Consolidated continues to owe Mr. Walsh pursuant to the settlement agreement."

Setting aside the issue of whether Kolb and Valeriano properly waived the conflict of interest, there is no indication whatsoever that Walsh waived the conflict.

At oral argument, O'Neill discussed the issue of waiver:

> **O'Neill**: . . . All of the parties have a community of interest in having – in prosecuting these claims against the attorney defendant [sic]. And then even if there is some type of conflict there, that conflict has been waived. Your Honor has affidavits that were attached in response to our motions A and B, of Messrs. Kolb and Valeriano, that they understood the conflict and waive the conflict. *And Mr. Walsh also agreed to that specifically in the signing of the settlement agreement*. So, we –
>
> **The Court**: Wait, wait, how did Walsh agree?
>
> **O'Neill**: Well–

> **The Court**: How did Walsh waive anything?
>
> **O'Neill**: He signed the settlement agreement, your Honor, where he assigned the claims over *and that the same attorney would be prosecuting all those claims.*
>
> **The Court**: How does that amount to a waiver of the conflict of interest?
>
> **O'Neill**: Well, because your Honor, he knew at the time of the settlement agreement, that that claim was being assigned to Messrs. Kolb and Valeriano.
>
> **The Court**: But how do I know that anybody told him, Mr. Walsh, you might have a conflict of interest matter here?
>
> **O'Neill**: Well, your Honor, I think the settlement agreement puts that issue at rest. I mean, if your Honor needs to have another affidavit because you think that it's not, that's something that can be supplied. I believe that that really is put to rest by the signing of the settlement agreement.
>
> **The Court**: Well, I'm certainly not going to give you legal advice.

*Oral Argument Tr.*, 52-53 , July 19, 2007. (Emphasis added.)

The record before me does not support a finding that Walsh was adequately informed of the potential conflict in representation or that he waived such conflict. First, the settlement agreement between Walsh and Consolidated Defendants did not, as Ms. O'Neill argues, specifically state that Meyerson and O'Neill would represent Consolidated Defendants in litigating any future claims. Instead, the settlement agreement's only reference to counsel states: "CE [Consolidated Defendants] will retain *counsel of its choice* to prosecute the Assigned Claims as well as any claims that CE, Kolb, and Valeriano can assert against the lawyer defendants Peter Schuchman, Lisa Thompson and/or the firm of Kozloff Stoudt." *Settlement Agreement,* at ¶ 11. (Emphasis added.)

At best, "counsel of its choice" simply allowed for Meyerson & O'Neill to be a possible

law firm available for hire by Consolidated Defendants. The agreement most certainly did not ensure that Walsh knew that Consolidated Defendants would hire Meyerson & O'Neill to represent them; it does not inform Walsh, or Kolb and Valeriano, of the potential conflicts such representation could incur; and it does not provide a waiver by Walsh, or Kolb and Valeriano, for that matter, of those conflicts.

Second, despite the colloquy at oral argument noting the conspicuous absence of any affidavit by Walsh on the issue of waiver, the only affidavits filed by Meyerson and O'Neill since the oral argument are those of Kolb and Valeriano attesting to the prejudice they will suffer if the disqualification motion is granted. Instead of indicating informed consent and waiver, Walsh has raised a number of conflict issues in his correspondence to the court in which he objected to Meyerson and O'Neill's motion to withdraw as counsel. Walsh's concerns are exactly the types of conflicts which an attorney would need to discuss with his client in obtaining a knowing waiver:[12] He insists that he is still an interested party because he is due fees and expenses from the settlement agreement, he questions how interest is being computed, and he questions how Meyerson and O'Neill will fairly represent his interests in collecting the proper amount owed to him by Consolidated Defendants when they represent them as well.

Walsh's continuing interest and clear lack of consent in this case is fatal to Meyerson and O'Neill's argument that their representation of Consolidated Defendants is permissible.

**CONCLUSION**

Meyerson and O'Neill agreed to represent Walsh and filed a complaint on his behalf

---

[12] Comment 18 of Rule 1.7 states: "Informed consent requires that each affected client be aware of the relevant circumstances and of the material and reasonably foreseeable ways that the conflict could have adverse effects on the interests of that client."

against Consolidated Defendants and Attorney Defendants. The binding arbitration with Consolidated Defendants resulted in an award to Walsh and the assignment of his remaining claims against Attorney Defendants to Consolidated Defendants. Despite the subsequent settlement agreement, the interests of Walsh and Consolidated Defendants remain directly adverse to each other, even if the same towards the Attorney Defendants. Walsh did not give informed consent to Meyerson and O'Neill's representation of Consolidated Defendants, and therefore his lawyers must be disqualified from representing his adversary.

An appropriate order follows.

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| WILLIAM J. WALSH | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| CONSOLIDATED DESIGN & ENGINEERING, INC. | : | No. 05-2001 |

**ORDER**

And now, this 14th day of January, 2008, IT IS HEREBY ORDERED that:

1. Defendants' motion to disqualify counsel (Dkt. # 113) is GRANTED and Meyerson & O'Neill are disqualified from representing Consolidated Design & Engineering, Inc., Kolb, and Valeriano.

2. Consolidated Design & Engineering, Kolb, and Valeriano shall have sixty days to retain new counsel.

BY THE COURT:

/s/ J. William Ditter, Jr.
J. WILLIAM DITTER, JR., S.J.